183 Cal.App.4th 702 (2010)
107 Cal. Rptr. 3d 432
THE PEOPLE, Plaintiff and Respondent,
v.
LEWIS MARCUS DOWL, Defendant and Appellant.
No. F057384.
Court of Appeals of California, Fifth District.
April 6, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*704 Thomas M. Singman, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and David A. Rhodes, Deputy Attorney General, for Plaintiff and Respondent.

*705 OPINION
HILL, J.
Rejecting a compassionate use defense, a jury convicted defendant Lewis Marcus Dowl of transportation of marijuana (Health & Saf. Code,[1] § 11360, subd. (a); count 1) and possession of marijuana for sale (§ 11359; count 2); however, the jury returned not true findings on the associated gang enhancements (Pen. Code, § 186.22, subd. (b)(1)), and found defendant not guilty of participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); count 3). The trial court sentenced defendant to prison for a total of three years. On appeal, defendant contends (1) insufficient evidence supports his convictions of transportation of marijuana and possession of marijuana for sale; and (2) the trial court abused its discretion and violated his constitutional rights when it refused to bifurcate trial of the gang allegations. We reject defendant's contentions and affirm the judgment.
(1) We publish the part of the opinion that holds a police officer need not qualify as a medical marijuana expert in order to render an opinion that marijuana being possessed is possessed for sales in cases where the defendant raises an affirmative defense under California's Compassionate Use Act of 1996 (hereafter the Compassionate Use Act). (§ 11362.5.)

FACTS
On November 29, 2008, two police officers stopped defendant for playing loud music in his car. When Officer Jason Williamson approached defendant's window, defendant gave the officer his driver's license and medical marijuana identification card and told him there was marijuana in the car.
A search of defendant and his car revealed the presence of 66.7 grams (just over two ounces) of marijuana. A single bag, containing 17.2 grams of marijuana, was found in defendant's pocket. Ten individual baggies, each containing three grams of marijuana, were found in the driver's door, and three individual baggies, each containing 6.5 grams of marijuana, were found lying on the backseat. A WD-40 can, with a hidden compartment containing marijuana residue, was also found in the car. However, no devices for ingesting marijuana were found in defendant's car.
Officer Williamson testified, in his expert opinion, that the marijuana found in defendant's possession was possessed for purposes of sale. Although the 17.2-gram bag of marijuana found in defendant's pocket "may or may not be for [defendant's] personal use," the location and packaging of the other 13 *706 baggies was consistent with "curb service" sales of illegal drugs. Depending on the quality of the marijuana, the three-gram baggies found in defendant's car could sell on the street for between $5 and $10 each, and the 6.5-gram baggies, could sell for approximately double that. Officer Williamson's opinion the marijuana was possessed for sale was unaffected by defendant's possession of a medical marijuana identification card "[b]ecause of the totality of the circumstances of what [the officer] saw."
The prosecution also presented the testimony of a gang expert, who opined that defendant was an active member of the Bloods criminal street gang and that the crimes in this case were gang related. Additional relevant facts are included below in our discussion of the bifurcation issue.

The defense
Defendant testified on his own behalf and presented medical records to show he sustained a shoulder injury from a hit-and-run car accident in May 2007. The injury caused him to suffer chronic, throbbing pain. As a result, defendant obtained a medical marijuana identification card from the Bakersfield health department in July 2008, after being evaluated by a physician. The identification card was valid at the time of his arrest. Defendant also had a written recommendation from his physician.
Defendant explained that medical marijuana helped to numb the pain caused by his shoulder injury and also helped him with sleep problems he had suffered for a long time. He usually consumed his marijuana by smoking it in cigars. When the police stopped him, he was carrying a "splitter" on his keychain, which is a cylindrical object used to split cigars.
Defendant denied that he was selling marijuana. The marijuana found in his possession was from a medical marijuana dispensary in Los Angeles. Defendant went to Los Angeles because there were no dispensaries in Bakersfield. When he purchased the marijuana from the dispensary, he was required to present his identification card. The marijuana cost him $200, and was packaged in a single bag.
After purchasing the marijuana, defendant divided it into separate baggies. When asked why he did this, defendant explained: "I package them in the dosage that I take on a daily basis and for it to fit in certain areas," including the WD-40 can, which he would use to carry his dosages when we went to *707 work. When asked to explain the presence of multiple baggies of marijuana in the driver's door and the three baggies in the backseat, defendant testified: "I was in a rush, and I just threw them in the car."

DISCUSSION

I. Sufficiency of the Evidence

Defendant contends the evidence is insufficient to support his conviction of either possession of marijuana for sale or transportation of marijuana because, although Officer Williamson was undisputedly qualified as an expert on unlawful marijuana sales, the record lacks "substantial evidence that the arresting officer had any expertise in differentiating citizens who possess marijuana lawfully for their own consumption, as distinct from possessing unlawfully with intent to sell. [Citation.]" (People v. Chakos (2007) 158 Cal.App.4th 357, 360 [69 Cal.Rptr.3d 667] (Chakos), citing People v. Hunt (1971) 4 Cal.3d 231, 237-238 [93 Cal.Rptr. 197, 481 P.2d 205] (Hunt).) For reasons discussed below, we respectfully disagree with the conclusion of the court of appeal in Chakos, and conclude Officer Williamson was not required to additionally qualify as a medical marijuana expert in order to render a valid opinion that the marijuana found in defendant's possession was possessed for sales simply because defendant presented some evidence raising a compassionate use defense.[2]
On appeal, we review the entire record to determine whether it contains evidence that is reasonable, credible and of solid value on the basis of which any rational trier of fact could have found appellant guilty beyond a reasonable doubt. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) We view the evidence in the light most favorable to the judgment and presume in support of the judgment every fact the trier could reasonably deduce and infer from the evidence. (Ibid.)
*708 (2) Transportation of marijuana is committed "`by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character.' [Citation.] ... [Citation.] `The crux of the crime of transporting is movement of the contraband from one place to another.' [Citation.] The term `transports' as used in the statute is `commonly understood and of a plain, nontechnical meaning.' [Citation.]" (People v. LaCross (2001) 91 Cal.App.4th 182, 185 [109 Cal.Rptr.2d 802]; see People v. Emmal (1998) 68 Cal.App.4th 1313, 1318 [80 Cal.Rptr.2d 907] ["to satisfy the element of `transportation' . . ., the evidence need only show that the vehicle was moved while under the defendant's control"].)
(3) "The essential elements of unlawful possession of [marijuana] are `dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' [Citations.]" (People v. Martin (2001) 25 Cal.4th 1180, 1184 [108 Cal.Rptr.2d 599, 25 P.3d 1081].)
(4) "In cases involving possession of marijuana or heroin, experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]" (People v. Newman (1971) 5 Cal.3d 48, 53 [95 Cal.Rptr. 12, 484 P.2d 1356] (Newman), disapproved on another point in People v. Daniels (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].) "[A]s to drugs which may be purchased by prescription, [however,] an officer's opinion that possession of lawfully prescribed drugs is for purposes of sale is worthy of little or no weight in the absence of evidence of some circumstances not to be expected in connection with a patient lawfully using the drugs as medicine. [Citation.]" (Newman, supra, at p. 53, citing Hunt, supra, 4 Cal.3d at pp. 237-238.)
In Hunt, supra, 4 Cal.3d 231, the California Supreme Court found the expert testimony of a police officer insufficient to support a conviction of possession for sale of restricted dangerous drugs in violation of section 11911. The officer found Hunt in a bedroom injecting himself with methedrine. At Hunt's feet was a travel case containing three full and one partially full 30 cubic centimeter vials of methedrine, each of which was labeled with a pharmacy label listing Hunt's name and a physician's name. The case also contained disposable syringes and needles. (4 Cal.3d at pp. 233-234.) The parties stipulated that Hunt obtained all of the methedrine in his possession *709 pursuant to a prescription, and Hunt's physician testified he had prescribed methedrine to Hunt. (Id. at pp. 234-235 & fn. 2.) The officer testified that users of methedrine use up to eight cubic centimeters per day. Based upon the quantity of methedrine Hunt possessed, its value for illegal street sales, and the quantity normally used by an individual, the officer opined that Hunt possessed the methedrine for sale. (Id. at pp. 234-235.) Hunt testified that he used about nine cubic centimeters of methedrine per day, and the vials seized from him constituted his personal supply for about one week. (Id. at p. 235.)
The Supreme Court found the officer's opinion carried little or no weight because he had insufficient expertise regarding the lawful possession of methedrine for medical use: "As to drugs, which may be purchased by prescription, the officer may have experience with regard to unlawful sales but there is no reason to believe that he will have any substantial experience with the numerous citizens who lawfully purchase the drugs for their own use as medicine for illness. [¶] In the absence of evidence of some circumstances not to be expected in connection with a patient lawfully using the drugs as medicine, an officer's opinion that possession of lawfully prescribed drugs is for purposes of sale is worthy of little or no weight and should not constitute substantial evidence sufficient to sustain the conviction. No such special circumstances were shown here as to the methedrine in the blue and white travel case. [¶] The officer stated that his opinion that the methedrine was held for sale was based on `the quantity involved, the over-all street value, the normal use by an individual.' Under his own testimony, the use by an individual could be up to 8 ccs. a day. The quantity in the blue and white travel case was less than 120 ccs. and could have been as little as a two-week supply. The street value seems immaterial. The fact that medicine purchased lawfully at reasonable prices may demand a much greater price in the illegal market furnishes no reason to suppose that a possession of a two-week supply of the drug pursuant to prescription is held for profit rather than use." (Hunt, supra, 4 Cal.3d at pp. 237-238.)
In Chakos, police stopped Chakos's car and found a plastic bag containing seven grams (a little less than one-quarter ounce) of marijuana, a physician's "medical slip" for marijuana use, and $781 in cash. (Chakos, supra, 158 Cal.App.4th at p. 360.) During a search of Chakos's home, officers found a little less than six ounces of marijuana, stored in "irregular amounts" "in different storage devices"; a gram scale; a closed circuit camera trained on the entrance; and 99 empty plastic bags described by the police officer expert witness as "`phlebotomy bags.'" (Chakos was a phlebotomist.) (Id. at pp. 360-361 & fn. 2.) The police officer expert had extensive narcotics training and experience, including training regarding growing, selling, and *710 packaging marijuana. But he had no prior experience, and apparently no training, with respect to medical marijuana. (Id. at pp. 361-362.) The officer opined that Chakos possessed all of the marijuana for the purpose of sale. As the basis for his opinion, the officer cited the money and the quantity of marijuana found in the car, which was consistent with the amount a dealer would sell to a user. Other factors were the surveillance system, scale, and packaging material found at Chakos's residence. (Ibid.)
The Chakos court found no basis for distinguishing Hunt. It concluded that "expertise in distinguishing lawful patterns of possession from unlawful patterns of holding for sale" was necessary (Chakos, supra, 158 Cal.App.4th at p. 367), and the police officer expert was no "more familiar than the average layperson or the members of this court with the patterns of lawful possession for medicinal use that would allow him to differentiate them from unlawful possession for sale" (id. at pp. 368-369). Accordingly, the court found the expert was "unqualified to render an expert opinion in this case," and concluded that the evidence was insufficient to support Chakos's conviction of possessing marijuana for the purpose of sale. (Id. at p. 369.)
In its discussion, the Chakos court did not address the fact the Compassionate Use Act provides an affirmative defense to the cultivation and possession of marijuana, which is otherwise illegal (People v. Mower (2002) 28 Cal.4th 457, 464 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (Mower); People v. Kelly (2010) 47 Cal.4th 1008, 1013 [103 Cal.Rptr.3d 733, 222 P.3d 186]), and thus we see an important basis for distinguishing Hunt, which did not involve an affirmative defense. In Mower the California Supreme Court applied "the so-called rule of convenience and necessity" to determine that the burden of proof as to the facts underlying the compassionate use defense should be allocated to the defendant. (Mower, at p. 477.) The court explained:
(5) "The rule of convenience and necessity declares that, unless it is `unduly harsh or unfair,' the `burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient.' [Citations.] ... [Citations.]
(6) "Application of the rule of convenience and necessity supports the conclusion that section 11362.5(d) [the Compassionate Use Act] should be interpreted to allocate to the defendant the burden of proof as to the facts underlying the defense provided by the statute.
"First, it would not be unduly harsh or unfair to allocate to the defendant the burden of proving the facts underlying this defense. These facts are that he or she was a `patient' or `primary caregiver,' that he or she `possesse[d]' or *711 `cultivate[d]' the `marijuana' in question `for the personal medical purposes of [a] patient,' and that he or she did so on the `recommendation or approval of a physician' [citation]. The existence of these facts is peculiarly within a defendant's personal knowledge, and proof of their nonexistence by the prosecution would be relatively difficult or inconvenient.
"Second, section 11362.5(d) constitutes an exception to sections 11357 and 11358, which make it a crime to possess and cultivate marijuana, because section 11362.5(d) provides that sections 11357 and 11358 `shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' [citation]." (Mower, supra, 28 Cal.4th at p. 477.)
We find the holding of Chakos to be inconsistent with the nature of the affirmative defense under the Compassionate Use Act. By essentially requiring the prosecution's narcotics expert to also qualify as medical marijuana expert in order to opine that marijuana in a defendant's possession is possessed for sales, Chakos improperly reallocates the burden of proof on the compassionate use defense to the prosecution contrary to the principles articulate by the Supreme Court in Mower. Under Chakos, it would be exceedingly difficult and inconvenient for a prosecutor to prove what is "reasonably related" to a defendant's medical needs. (CALJIC No. 12.24.1; see also People v. Wright (2006) 40 Cal.4th 81, 88, 92, fn. 7 [51 Cal.Rptr.3d 80, 146 P.3d 531] [discussing application of compassionate use defense to crime of transportation of marijuana].) To our knowledge, police are not generally qualified to assess how much marijuana is needed for a specific medical condition or trained in how to differentiate a quantity of marijuana for medical use and a quantity of marijuana for sales.
For the forgoing reasons, we decline to follow Chakos, and conclude that the presence of the marijuana in defendant's car, combined with Officer Williamson's expert opinion that the circumstances of defendant's possession were consistent with unlawful sales, constituted substantial evidence supporting defendant's convictions for transporting and possessing marijuana for sales.

II., III.[*]

*712 DISPOSITION

The judgment is affirmed.
Levy, Acting P. J., and Cornell, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.
[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.
[2] The trial court instructed the jury with CALJIC No. 12.24.1 on the compassionate use defense as follows: "The possession or transportation of marijuana is not unlawful when the acts of defendant are authorized by law for compassionate use. The possession or transportation of marijuana is lawful (1) where its medical use is deemed appropriate and has been recommended or approved, orally or in writing, by a physician; (2) the physician has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief; (3) the marijuana possessed or transported was for the personal medical use of the patient; and (4) the quantity of marijuana possessed or transported and the form in which it was possessed or transported were reasonably related to the patient's then current medical needs, not exceeding eight ounces of dried marijuana per qualified patient. [¶] To establish the defense of compassionate use, the burden is upon the defendant to raise a reasonable doubt as to guilt of the unlawful possession or transportation of marijuana."
[*] See footnote, ante, page 702.