[No. G021290. Fourth Dist., Div. Three. Dec. 30, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD JAY EMMAL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

1314

## COUNSEL

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Esteban Hernandez, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

BEDSWORTH, J.—A jury convicted Ronald Jay Emmal of transporting methamphetamine but found him not guilty of possessing it for sale. The trial court then found two "strike" allegations and four 1-year prior allegations to be true. Emmal claims (1) the evidence was insufficient to support his conviction; (2) the trial court provided the jury a defective definition of "transportation"; (3) the court improperly augmented his twenty-five-year-to-life sentence with three 1-year sentence enhancements; and (4) his sentence constitutes cruel and unusual punishment. We find no merit in any of these contentions and affirm the judgment.

Investigators Shawn Condon and Michael Helmick of the Anaheim Police Department saw Emmal parked in the parking lot of the Mediterranean Motel and thought the passenger in his car resembled a bombing suspect they were looking for. They drove slowly past the parked car and looked closely at Emmal and his passenger. Convinced neither was their man, they pulled into another parking space so they could turn around and depart, only—to their amazement—to have Emmal drive up behind them and block their exit.

The upshot of the ensuing events, not germane to this appeal, was that Emmal's passenger confronted the officers while Emmal started to leave, drove about 20 feet through the parking lot, then got out and walked back to the officers. In a search not contested here, police found a "baggie" containing 991 milligrams of methamphetamine, a very active pager (according to Condon, it went off "continually"), and $400 cash in Emmal's pocket.

I

Emmal insists the evidence undergirding his conviction is insufficient as a matter of law because he only drove his car about 20 feet, and such "minimal movement" is not nearly enough to constitute "transportation" within the meaning of Health and Safety Code section 11379. We cannot agree.

Health and Safety Code section 11379 merely requires a person "transport[]" methamphetamine. It makes no attempt to quantify the distance that

must be traversed. ■ As we have observed before, "Transportation of a controlled substance is established by [simply] carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character. [Citations.]" (*People* v. *Meza* (1995) 38 Cal.App.4th 1741, 1746 [45 Cal.Rptr.2d 844].) ■ Neither this nor any other court has ever required that the length of travel exceed "minimal movement."

Emmal concedes the cases interpreting the statute set no threshold for the distance that must be driven, but he urges us to set one, analogizing his case to *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]. There, our Supreme Court held that *incidental* movement of a robbery victim did not transmogrify the robbery into a kidnapping. Hence, the court explained, the greater penalties applicable to kidnapping could not properly be applied. Emmal suggests that the reasoning of *Daniels* should be engrafted here because "the Legislature could not have intended to inflict the heavy punishment of the trafficking statute for an act of moving a small amount of methamphetamine which is merely an incident to the crime of possessing that contraband . . . ." But the crime for which Emmal was convicted is *not* a mere incident to the crime of possessing methamphetamine.

In comparing the crimes of robbery and kidnapping, the *Daniels* court observed, " 'It is difficult to conceive of a situation in which the victim of a robbery does not make some movement under the duress occasioned by force or fear.' [Citation.]" (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1134.) Yet, the court reasoned, the Legislature could not have intended that every robbery be a kidnapping simply because movement is involved. The court therefore held that kidnapping requires some movement in addition to that associated with the robbery—a movement that "substantially increase[s] the risk of harm over and above that necessarily present in the crime of robbery itself. [Citation.]" (*Id.* at p. 1139.)

Here, the *Daniels* reasoning just doesn't play. It is *not* difficult to conceive of a situation in which a person who possesses a controlled substance is merely in possession and not also committing the crime of transportation. Nor is asportation an element of possession in the first place. And while Emmal emphasizes that the quantity of methamphetamine he possessed was minuscule, the offense of transporting that substance has never been found *not* to occur simply because the amount being transported was small or held for personal use. In fact, the California Supreme Court has held just the opposite. (*People* v. *Rogers* (1971) 5 Cal.3d 129, 134, 137 [95 Cal.Rptr. 601, 486 P.2d 129].)

■ The Legislature has determined transportation of controlled substances—no matter what quantity is involved—should be prohibited because

it poses greater *risks* to the public than simple possession does. As our Supreme Court has observed, the increased penalty provided for transportation is intended to discourage sales and purchases; to reduce the incidents of traffic accidents caused by those who might use and be impaired by a controlled substance during its transportation; and to inhibit the use of controlled substances in general by making it difficult to distribute and obtain them. (*People* v. *Rogers, supra,* 5 Cal.3d at pp. 136-137.) The proscription and the penalty that goes with it do not require an *actual* sale, an impaired driver, or even use of the drug before they come into play. It is enough that those evils, along with their attendant risks, have been reasonably associated with the prohibited deed. (*Ibid.*)

Like the appellant in *People* v. *Eastman* (1993) 13 Cal.App.4th 668, 676-677 [16 Cal.Rptr.2d 608], Emmal "is unable to point to anything . . . since *Rogers* that would undercut the policy basis of the decision—that the transportation of contraband, even if possessed only for personal use, is properly punished more severely than simple possession because the act of transportation substantially increases the risks to the public. [Citation.] . . . We accept the continued vitality of [that] holding . . . and the fact that the jury found appellant not guilty of possessing methamphetamine *for sale* is not relevant." We perceive no authority, or reason, to alter that analysis here.

Nor are we troubled by the fact Emmal drove his car a minimal distance. On that point, we find the Attorney General's analogy to driving under the influence cases helpful. Because of the risk that intoxicated drivers pose to the public, the Legislature has chosen to make it illegal "to drive a vehicle" while under the influence of alcohol or drugs. (Veh. Code, §§ 23152, subd. (a), 23153, subd. (a).) Like the statute prohibiting the "transportation" of controlled substances, however, the statutes criminalizing "driving" while under the influence make no attempt to define the amount of driving required.

Because the risks such driving poses are so great, the Legislature has chosen *not* to make a finding of "driving" dependent on the distance traveled. Consequently, our courts have interpreted the term to include what might legitimately be described as the most "minimal movement," in order to discourage *any* driving by a person who is under the influence. (*Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445, 451-452 [214 Cal.Rptr. 249] [car moved "forward several inches"]; see also *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 769, fn. 23 [280 Cal.Rptr. 745, 809 P.2d 404].)

A similar analysis is appropriate here. In order to discourage *any* illicit transportation of controlled substances, a rule which refuses to set up an

artificial threshold for distance is more likely to effectuate the legislative purpose, and is well within the Legislature's constitutional discretion.

If this strict interpretation sometimes results in the prospect of a harsh result, that can be dealt with at sentencing. After all, the difference between simple possession and transportation is the difference between a felony and a more serious felony. We are confident the trial courts can fashion appropriate punishment within that range to reflect the facts of the case. It appears the Legislature felt the same way.

We therefore hold that to satisfy the element of "transportation" required by Health and Safety Code section 11379, the evidence need only show that the vehicle was moved while under the defendant's control. And since the undisputed evidence shows Emmal drove 20 feet on his way out of the parking lot, we find the evidence of transportation was sufficient to support Emmal's conviction.

## II

In a related argument, Emmal complains because the trial court answered a jury inquiry about the meaning of the term, "transportation," by providing this explanation: "Transportation of methamphetamine requires that the substance be carried or conveyed from one place to another. There is no set rule as to how far in terms of distance or how long in terms of time the transportation must be. In determining if the substance was 'transported' the jury should compare the starting point from which the alleged transportation began, and the end point where it terminated, compare those two locations, and determine if there was a practical difference between them. If there is . . . then this may in[dic]ate there was a transportation, regardless of how short the distance between the two. If there is no practical difference between the locations then this may indicate there was no transportation."

Citing *People* v. *Rogers*, *supra*, 5 Cal.3d at pages 136-137, Emmal faults the "practical difference" language of the court's clarifying instruction because it "failed to impart to the jury the requirement that the movement of the contraband must increase the potential harm to society over and above the mere possession of the methamphetamine." We disagree. In fact, we think the court's instruction gave Emmal an "edge" to which he was not entitled.

As we have said, the statute prohibits transportation—any transportation—because the Legislature deems it important to discourage the distribution and use of dangerous drugs and the risks that attend use of them during

their movement from one place to another. The idea is to make it difficult for people to obtain controlled substances, difficult for those with controlled substances in their possession to distribute them, and costly for individuals in possession of controlled substances to risk the lives of others by getting behind the controls of what, in other contexts, have been designated "deadly weapons." (See, e.g., *People* v. *Bow* (1993) 13 Cal.App.4th 1551, 1558 [17 Cal.Rptr.2d 94] [recognizing that cars qualify].) The statute was not designed to apply only to those who happen to have a minimum number of kilos, tons, or similar quantities of controlled substances in their trunks and who succeed in driving to a point which is "practically different" from the point at which they started.

Thus, we conclude the trial court *did* err by instructing the jury that some "practical difference between the locations" was required—since no such difference is mandated by the statute. However, the erroneous instruction favored Emmal by setting up an artificial barrier to a finding that transportation occurred. That the prosecutor's burden was unnecessarily *increased* is not a ground upon which Emmal can reasonably expect to succeed in achieving a reversal of his conviction.

## III, IV*

. . . . . . . . . . . . . . . . . . . . . . . .

## Disposition

The judgment is affirmed.

Wallin, Acting P. J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 24, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1313.