[No. C036760 Third Dist. Aug. 1, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
MATTHEW PAUL LaCROSS, Defendant and Appellant.

**COUNSEL**

Thomas M. Singman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Carlos A. Martinez and Daniel Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CALLAHAN, J.**—Health and Safety Code section 11379, subdivision (a),[1] provides: "[E]very person who transports . . . any controlled substance . . . shall be punished by imprisonment in the state prison . . . ." A jury convicted defendant Matthew Paul LaCross of two counts of violating this statute. Defendant contends he did not "transport" methamphetamine because he used his bicycle to carry it. Section 11379 was designed to prohibit the trafficking of illegal drugs and to prevent their ready availability. The plain language of this statute prohibits the movement of drugs from one place to another even on a bicycle. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *March 3, 2000*

At 4:00 a.m. on March 3, 2000, Corning Police Officer Randall Bassett saw defendant riding his bicycle without a light. Defendant went into a

---

[1] Further undesignated statutory references are to the Health and Safety Code.

convenience store. Officer Bassett watched defendant from his patrol car in a nearby alley. Defendant left the convenience store and rode his bicycle down the alley past the officer and his car. Bassett asked defendant to stop. Defendant looked directly at the officer, sped up, and rode away from him.[2]

As defendant rode away, he turned onto Sixth Street. Officer Bassett saw defendant reach into his jacket pocket, remove something, and then make an outward movement with his arm. When the officer finally caught up with defendant, Bassett conducted a patdown search, but found nothing. The officer then released defendant.

Bassett returned to the area in which he observed defendant make the outward gesture. At that location, Officer Bassett found a black leather case. The case contained three hypodermic needles, a bent spoon with residue, three baggies of marijuana, a small vial, 20 small baggies and 31.4 grams of methamphetamine in both powder and rock form.

A short time later, Officer Bassett saw a car drive down the alley and turn onto Sixth Street in the same area he had seen defendant make the gesture and found the black case. Defendant was in the passenger's seat. Defendant looked out the front of the car at the ground and then later hung out of the window looking at the ground as the car drove down the street.

B. *March 20, 2000*

On March 20, 2000, Corning Police Officer David Kain saw defendant riding his bicycle on the wrong side of the street. As Officer Kain made a U-turn, he saw the defendant accelerate away from him. Kain lost sight of defendant for about 20 to 25 seconds when defendant rode around a house into its backyard. When Officer Kain next saw defendant, defendant was next to his bicycle facing away from Kain. The officer placed the defendant in custody.

Officer Kain searched the backyard of the house and found a leather wallet. The grass was pressed down as if the wallet had been thrown from the direction of the defendant. The wallet looked as if it had not been there very long.

The wallet contained two syringes, several small empty baggies, a larger empty baggie, a small metal tin, and a baggie containing 8.07 grams of methamphetamine. When defendant was booked, the officers found a "pay-owe" sheet among his belongings.

---

[2]Defendant had headphones on.

The People filed a second amended information charging defendant with two counts of transportation of methamphetamine (§ 11379), two counts of possession of methamphetamine for sale (§ 11378), and two counts of possession of drug paraphernalia (§ 11364).

After a two-day jury trial, the jury found defendant guilty on all six counts. On August 14, 2000, the trial court sentenced defendant to a total of four years in state prison. Defendant appeals.

### DISCUSSION

Defendant argues he did not "transport" methamphetamine under section 11379 by carrying it on his bicycle. We reject this claim. The term "transport" includes moving illegal drugs from one place to another, even by bicycle.

"[E]very person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance . . . shall be punished by imprisonment in the state prison for a period of two, three, or four years." (§ 11379, subd. (a).)

"Transport," as used in this statute, has no technical definition. "Transportation of a controlled substance is established by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character." (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1746 [45 Cal.Rptr.2d 844].) "To transport means to carry or convey from one place to another." (*People v. Kilborn* (1970) 7 Cal.App.3d 998, 1002 [87 Cal.Rptr. 189].) "The crux of the crime of transporting is movement of the contraband from one place to another." (*Id.* at p. 1003.) The term "transports" as used in the statute is "commonly understood and of a plain, nontechnical meaning." (*People v. Eastman* (1993) 13 Cal.App.4th 668, 673-677 [16 Cal.Rptr.2d 608].)

In *People v. Emmal* (1998) 68 Cal.App.4th 1313, 1315 [80 Cal.Rptr.2d 907], the only evidence the defendant transported drugs was that he drove 20 feet on his way out of the parking lot in a car that contained methamphetamine. On appeal, the defendant argued that more than minimal movement was required to establish that he transported the drug in violation of section 11379. (*People v. Emmal, supra,* at p. 1315.) In rejecting this argument, the court stated, "Health and Safety Code section 11379 . . . makes no attempt to quantify the distance that must be traversed. . . . Neither this nor any

other court has ever required that the length of travel exceed 'minimal movement.' " (*Id.* at pp. 1315-1316.) The court concluded that this evidence was sufficient to support the defendant's conviction for transportation of methamphetamine. (*Id.* at p. 1318.)

Here, defendant used his bicycle to move methamphetamine from one place to another. Thus, under the literal and commonsense interpretation of the statute, defendant "transported" methamphetamine in violation of section 11379.

Despite his literal violation of the statute, defendant argues that "carrying methamphetamine on a bicycle is not what the [L]egislature intended to criminalize when it made transportation of methamphetamine illegal." We disagree.

In analyzing the nearly identical statute that bars the transportation of marijuana, the court, in *People v. Rogers* (1971) 5 Cal.3d 129, 136-137 [95 Cal.Rptr. 601, 486 P.2d 129], stated: "[t]he Legislature was entitled to assume that the potential for harm to others is generally greater when narcotics are being transported from place to place, rather than merely held at one location. The Legislature may have concluded that the potential for increased traffic in narcotics justified more severe penalties for transportation than for mere possession or possession for sale, without regard to the particular purpose for which the transportation was provided, a matter often difficult or impossible to prove. Moreover, a more severe penalty for those who transport drugs may have been deemed appropriate to inhibit the frequency of their own personal use and to restrict their access to sources of supply, or to deter the use of drugs in vehicles in order to reduce traffic hazards and accidents, as well as to deter occurrences of sales or distributions to others. The relative privacy and increased mobility afforded by the automobile offers expanded opportunities for the personal use and acquisition of drugs; greater penalties may legitimately be imposed to curtail those opportunities. [Fns. omitted.]" In *People v. Cortez* (1985) 166 Cal.App.3d 994, 1000 [212 Cal.Rptr. 692], the appellate court concluded this statute is "directed at attempting to prevent or deter the movement of drugs from one location to another, thereby inhibiting trafficking in narcotics and their proliferation in our society."

In analyzing Health and Safety Code section 11379, the Fourth District Court of Appeal echoed *Rogers.* "[T]he increased penalty provided for transportation is intended to discourage sales and purchases; to reduce the incidents of traffic accidents caused by those who might use and be impaired

by a controlled substance during its transportation; and to inhibit the use of controlled substances in general by making it difficult to distribute and obtain them." (*People v. Emmal, supra,* 68 Cal.App.4th at p. 1317.) "The proscription and the penalty that goes with it do not require an *actual* sale, an impaired driver, or even use of the drug before they come into play. It is enough that those evils, along with their attendant risks, have been reasonably associated with the prohibited deed." (*Ibid.,* italics in original.)

The application of section 11379 to the use of a bicycle furthers the policies underlying the ban on transportation. First, a bicycle makes the drugs more widely available for purchase and sale than if the drugs are in a single location. Bicycles have become a widespread method of quickly delivering packages in urban environments. The use of a bicycle enlarges the potential distribution area from a single location to a radius of miles from that location. A bicycle can also be used by a buyer to get to a distribution center and thereby enlarge the customer base of a drug dealer. The application of this statute to the movement of drugs by bicycle serves to limit the availability of drugs and their ultimate purchase and sale.

Second, a bicycle provides a quick, inexpensive, and unobtrusive means of moving drugs. "While not as fast over great distances as an automobile, in certain circumstances its size and weight make a bicycle more mobile than other vehicles." (*People v. Allen* (2000) 78 Cal.App.4th 445, 449 [92 Cal.Rptr.2d 869].) The application of this statute to the movement of drugs by bicycle deters the personal use of drugs by making it more difficult to distribute and traffic in drugs.[3]

Third, our society has an interest in discouraging bicycling under the influence of illegal drugs. This prohibition protects both the bicyclist and innocent people who may get hurt in an accident caused by an impaired bicyclist. "When operated on a highway, bicycles are subject to duties applicable to a driver of an automobile. (Veh. Code, § 21200.)" (*People v. Allen, supra,* 78 Cal.App.4th at p. 450.) Riding a bicycle under the influence of alcohol or drugs is just as illegal as driving a car under the influence. (Veh. Code, § 21200, subd. (a).) Applying this statute to bicyclists will serve to deter the operation of bicycles by persons under the influence of the drugs and protect the public.

We therefore hold Health and Safety Code section 11379's prohibition on the transportation of methamphetamine applies to transportation by bicycle.

---

[3]Our conclusion that the definition of "transports" in section 11379 includes bicycles is further strengthened by the bicycle's role as a part of the transportation system. Bicycle commuting is included in transportation planning as a key method to ease congestion and air pollution. (See, e.g., Gov. Code, §§ 65080, subds. (a), (b)(1)(C)(v) & (3)(B)(vii), 65080.3, subd. (c)(2), 65089, subd. (b)(3); Sts. & Hy. Code, §§ 885.2, subds. (f) & (g), 890.)

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.