Filed 5/22/14  P. v. Jones CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B249465 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA056827) |
| v. | |
| WILLIE LEE JONES, | |
| Defendant and Appellant. | |

 

Appeal from a judgment of the Superior Court of Los Angeles County, David B. Walgren, Judge.  Affirmed.

Law Office of Andy Miri and Andy Miri for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Willie Lee Jones of transportation of a controlled substance and possession for sale of cocaine base. Jones appeals, challenging the denial of his motion to suppress evidence, and arguing that his conviction for transportation was not supported by substantial evidence. We affirm.

## I.     The seized evidence was legally obtained.

An information charged Jones with one count each of transportation of a controlled substance and possession of cocaine base for sale, in violation of Health and Safety Code sections 11352, subdivision (a) and 11351.5 respectively, and alleged that Jones had suffered five prison priors. Jones pleaded not guilty and moved to suppress evidence.

Jones's motion to suppress under Penal Code section 1538.5 argued that all the evidence seized at the time of his arrest was obtained in an unreasonable warrantless search conducted without probable cause, and his detention was also without probable cause. At the suppression hearing, Los Angeles County Sheriff Sergeant Steve Owen testified that at 7:45 a.m. on July 15, 2012, he was driving north in Lancaster when he saw Jones seated in the driver's seat of a vehicle in a parking lot in front of a vacant Mexican restaurant, just north of the Shadow Park Hotel, in a location where "a lot of negotiations are made." With him was a known female prostitute and drug user known as "Texas," who Sergeant Owen recognized from previous contacts. Sergeant Owen made a U-turn, and Jones "appeared startled. He reached down as if he was either attempting to discard something or retrieve something from the driver's floorboard." Sergeant Owen pulled up to him, asked Jones if he had his driver's license (he answered yes), and asked him whether he was on parole (he said he was). Because Sergeant Owen knew the area and knew Texas was a prostitute, he decided to conduct a parole search of Jones and his car. He detained Jones, had him exit, and his partner detained Texas. The search of the vehicle turned up, from underneath the driver's seat where Jones had been reaching, a small green and white pill bottle containing something that appeared to be rock cocaine, in a large amount suitable for street sales. The search also uncovered paperwork under the front passenger seat and in a black backpack in the left rear passenger seat, and two

2

cell phones.  In the black backpack was a pill bottle with over 75 Vicodin pills, a marijuana baggie, 80 Viagra pills, Ibuprofen, other prescription pills, and a gram scale. A search of Jones yielded 16 $100 bills.  Sergeant Owen confirmed that Jones was on parole during the search, using the computer in his patrol car.

Jones's counsel argued that Jones's presence in an area known for prostitution or narcotics (and talking to a known prostitute) was not enough to justify detention, and all the subsequently discovered evidence was "fruit of the poisonous tree," as was the answer to the question whether Jones was on parole.  The prosecutor argued that the contact was consensual and the search flowed from Jones's admission that he was on parole.  The court denied the motion to suppress, holding that the search was justified as a parole search.

On appeal, Jones argues that the police officer did not have probable cause to ask him whether he was on parole.  Jones raised this issue in the trial court when he argued that Sergeant Owen's question whether Jones was on parole was the result of an illegal detention.  In our review, we exercise our independent judgment whether on the facts as found by the trial court and supported by substantial evidence, the search was reasonable under the Fourth Amendment.  (*People v. Samples* (1996) 48 Cal.App.4th 1197, 1203–1204.)

A parole search need not be based on probable cause or reasonable suspicion of criminal activity; the standard conditions for California parolees provide that their person, residence, and any property under their control may be searched without a warrant at any time by any law enforcement officer.  (Cal. Code Regs., tit. 15, § 2511, subd. (b); *People v. Reyes* (1998) 19 Cal.4th 743, 751–752.)  The search itself was valid given that Sergeant Owen knew that Jones was on parole, and Jones does not argue that the search was otherwise arbitrary or for purposes of harassment.  (*Samson v. California* (2006) 547 U.S. 843, 856 [126 S.Ct. 2193, 165 L.Ed.2d 250].)

Further, even construing the encounter in the parking lot as a traffic stop, "an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law.  [Citations.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1082.)  "[T]he officer's

suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity."' [Citation.]" (*Id.* at p. 1083.) The subjective suspicion supporting the investigative stop must be objectively reasonable. (*Ibid.*) Here, Sergeant Owen saw Jones seated in the driver's seat of a car in a parking lot with a known prostitute and drug user, in an area known for negotiations. When he made a U-turn with his patrol car, he saw Jones appear startled and move as if to discard or retrieve something from the floorboard. These were "specific, articulable facts" that were reasonably consistent with criminal activity, justifying Sergeant Owen's act of pulling up next to Jones's car and conducting an investigatory stop.

Sergeant Owen's question whether Jones was on parole did not require additional reasonable suspicion, much less probable cause. "Questioning during a routine traffic stop on a subject unrelated to the purpose of the stop is not itself a Fourth Amendment violation." (*People v. Brown* (1998) 62 Cal.App.4th 493, 499.) "While the traffic detainee is under no obligation to answer unrelated questions, the Constitution does not prohibit law enforcement officers from asking. [Citations.]" (*Ibid.*)

The trial court properly denied the motion to suppress.

## II. Substantial evidence supported the jury's verdict.

Jones's other argument is that there was not substantial evidence of transportation under Health and Safety Code section 11352, subdivision (a), which provides for the punishment of "every person who transports . . . any controlled substance." We review this claim by examining the entire record in the light most favorable to the judgment, to determine whether there is substantial evidence that supports the jury's verdict, reversing only if "'"on no hypothesis whatever is there sufficient substantial evidence to support the verdict."'" (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.)

"'Transportation of a controlled substance is established by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character.' [Citation.]" (*People v. LaCross* (2001) 91 Cal.App.4th 182, 185.) To transport means to carry from one place to another, and the term "'transports'" in the statute has its plain, nontechnical meaning, as commonly understood. (*Ibid.*) Even

4

driving a car "a minimal distance," such as about 20 feet, suffices. (*People v. Emmal* (1998) 68 Cal.App.4th 1313, 1315, 1317.) "The Legislature has determined transportation of controlled substances—no matter what quantity is involved—should be prohibited because it poses greater *risks* to the public than simple possession does." (*Id.* at pp. 1317–1318.) No "artificial threshold for distance" is required, "[i]n order to discourage *any* illicit transportation of controlled substances." (*Ibid.*) "[T]he evidence need only show that the vehicle was moved while under the defendant's control." (*Id.* at p. 1318.) Both of those cases construe Health and Safety Code section 11379, subdivision (a), which uses identical transportation language ("every person who transports . . . any controlled substance . . .") regarding other controlled substances. Jones's analogy to kidnapping cases is inapposite, as the kidnapping statute, Penal Code section 207, subdivision (a), requires "that the victim be moved a substantial distance." (*People v. Bell* (2009) 179 Cal.App.4th 428, 435.)

The parties stipulated at trial to Jones's knowledge of the presence of the drugs and that he knew they were controlled substances. Sergeant Owen testified that on July 15, 2012, he saw Jones in the driver's side of his car parked near a palm tree between the restaurant and the inn with a known prostitute, "Texas," in the passenger seat. He made a U-turn, "and as I did that, I watched the defendant. He started to drive forward in a southeasterly direction, appeared startled. He immediately reached down to the driver seat, and I pulled my car up to his car in that fashion as he was beginning to exit the parking lot, the driveway." The jury saw a photograph of the traffic stop with the patrol car and Jones's car in the driveway. Officer Owen asked Jones a couple of questions (the patrol car's window was down, as was Jones's car window), and after Jones got out of his car, Officer Owen "looked underneath where [he] saw [Jones] reaching underneath the driver seat" and recovered a bottle containing what he recognized as rock cocaine.

In his defense, Jones testified that he and Texas waited in the car before a "connection" arrived to sell him and Texas $200 of drugs, intending to move his car in the parking lot to a better location (because the car "was out kind of like a sore thumb").

5

On cross-examination, the prosecutor showed him the photograph of the traffic stop and asked him whether he was "driving out of the parking lot when Sergeant Owen makes contact with [him]." Jones answered, "I can't remember. I don't think I was driving out." The prosecutor pointed out that Jones's car was "halfway," with "the front tire of your car . . . actually on the driveway leading out of that motel," and asked if Jones "parked [his] car on the driveway just feet away from the street." Jones answered that he parked the car in the driveway just feet away from the entrance of Sierra Highway (on the side near Texas's motel room) as soon as he got to the parking lot. He got out of the car and walked to Texas's room, where they arranged to buy the drugs, and then they went down to the car again and sat in the car until a man arrived to sell them the drugs. The prosecutor reminded Jones that Officer Owen had testified "he saw [Jones] parked over by the palm tree shown in the middle. When [Jones] saw Sergeant Owen make a U-turn, [Jones] started driving out of the parking lot over on the driveway, and that's where Sergeant Owen stopped [Jones]." Jones answered, "No, sir," and said that Sergeant Owen was not telling the truth. Jones testified that after the drugs arrived, he intended to make a U-turn and go back to Texas's room to smoke the drugs. He had just gotten the rock cocaine into the bottle when the sheriff drove up.

In closing, the prosecutor argued that Jones drove his car to try to get away from Sergeant Owen, and that Jones's testimony that he never moved the car was not believable, stating, "You believe the truth of Sergeant Owen or you believe the lie of the defendant." The jury was instructed: "A person *transports* something if he or she carries or moves it from one location to the other, even if the distance is short."

The credibility of the witnesses is a matter entirely for the jury to determine (Evid. Code, § 312), and as a reviewing court we may not reevaluate Sergeant Owen's credibility. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) Sergeant Owen's testimony was substantial evidence supporting the jury's finding that Jones transported the drugs for the minimal distance required by the transportation statutes, and we will not disturb the jury's decision to believe him. "[A]ll conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 849.)

6

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.