Filed 4/28/15  P. v. Herrera CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PATRICIA TRONCOSA HERRERA,<br><br>    Defendant and Appellant. | D064988<br><br><br>(Super. Ct. No. JCF28468) |


APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed in part, reversed in part and remanded for further proceedings.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

Patricia Troncosa Herrera appeals a judgment following her jury conviction of possession of methamphetamine for sale (Health & Saf. Code, § 11378),[1] transportation of methamphetamine (§ 11379, subd. (a)), and receiving stolen property (Pen. Code, § 496, subd. (a)). The jury also found true allegations that in committing the possession and transportation offenses Herrera was personally armed with a firearm (Pen. Code, § 12022, subd. (c)). She admitted the truth of allegations that she had two prior convictions (§ 11370.2, subd. (b)). The trial court sentenced her to a total term of 14 years in prison. On appeal, Herrera contends: (1) the evidence is insufficient to support her convictions of possession for sale, transportation (or transportation for sale), and receiving stolen property, and the true findings that she was personally armed with a firearm and had two prior convictions; (2) the trial court erred by concluding she was ineligible for local custody; and (3) the court erred by not striking the prior conviction allegations and then improperly making dual use of those prior convictions in imposing sentences on other convictions and enhancements.

FACTUAL AND PROCEDURAL BACKGROUND

At about 1:00 a.m. on March 3, 2012, City of Imperial police officers responded to a dispatch report of a motion-activated alarm at Imperial High School. Although police found no one inside the school, they saw a white Chevrolet pickup truck travel southbound on E Street and then stop with its lights off near the 10th Street intersection. The officers watched the truck for three to four minutes and saw no one exit the truck.

---

[1]     All statutory references are to the Health and Safety Code unless otherwise specified.

Imperial County District Attorney's Office investigators Rafael Peraza and Gabriel Vela arrived on the scene and pulled up behind the white pickup truck. Vela contacted its driver, Miguel Derma, through the open driver's side window, and saw Herrera sitting in the passenger's seat. Derma told Vela he was waiting for a friend. Both Derma and Herrera appeared to be nervous. Derma's hands were moving about and shaking, and Herrera was squirming and fidgety, and her hands were moving around. Vera directed Derma to go to the back of the truck where Peraza was standing. Derma approached Peraza, gave him the same story, and acted nervously. After Derma stated he had a pocket knife, Peraza patted him down and found the knife, a loaded firearm magazine, and a loaded .45 semiautomatic firearm on him. Peraza arrested Derma. Vela searched the pickup truck and found a loaded .357 revolver wedged between the back of the driver's seat and the center console and covered by a cloth. The gun was easily accessible by the front passenger and difficult to access by the driver. The gun held four bullets in its five cylinders. A used .357 cartridge was found in the pocket of the jacket Herrera was wearing.[2] A .45 cartridge, a butterfly knife, and $305.25 in cash were also found in her jacket pocket. The cash included fifteen $20 bills. The gun had been recently stolen.

Vela handcuffed Herrera and placed her in the back seat of a patrol car. After she complained of shoulder pain, he handcuffed her again using two handcuffs, giving her additional range of motion. After Herrera was transported to a law enforcement

---

[2]     Herrera denied the jacket belonged to her and stated she put it on because she became cold after Derma gave her a ride.

coordination center, an agent searched the patrol vehicle and found a small plastic bag wedged under the seat on which Herrera had been sitting. The bag contained more than 32 grams of methamphetamine. Of that amount, about four and one-half grams were packaged into a small, plastic sealed bindle.

A custodial search of Derma found two bindles of methamphetamine, weighing 1.43 grams and 3.30 grams, in one of his boots, and 14.8 grams of marijuana in the other boot. The methamphetamine was consistent with personal use, sale, or both. The two bindles are consistent with what is known on the street as an "8-ball" with a street price of $150 each. Derma also had $75 in cash in his possession.

When officers further searched the pickup truck, they found a blue vinyl bag in the space behind the glove box. The bag contained a digital scale, a glass methamphetamine smoking pipe, four "dime-sized" plastic bags, a pen, and plastic tubing. A white powder residue, consistent with methamphetamine, was found on the weighing surface of the scale, the pipe, and the bags.

A first amended information charged Herrera and Derma with possession of methamphetamine for sale (§ 11378), transportation of methamphetamine (§ 11379, subd. (a)), and being a felon in possession of a concealable firearm in a vehicle (Pen. Code, § 25400, subd. (a)). It also charged Herrera with receiving stolen property (Pen. Code, § 496, subd. (a)). It also alleged that in committing the methamphetamine possession and transportation offenses, they were personally armed with a firearm (Pen. Code, § 12022, subd. (c)) and that Herrera had two prior convictions (§ 11370.2, subd. (b)).

4

At trial, the prosecution presented evidence substantially as described above. In addition, it presented Peraza's testimony that Herrera possessed for sale the methamphetamine recovered from the back of the patrol vehicle, which was sufficient to make 1,200 street doses. He based that opinion on the amount of methamphetamine found, its packaging in separate bags, the amount of money recovered, the guns, and the digital scale. On conclusion of the prosecution's case, the trial court dismissed the section 25400, subdivision (a) (i.e., being a felon in possession of a concealable firearm in a vehicle), charge against Herrera. The jury found Herrera guilty on the three remaining counts and found true the allegations she was personally armed with a firearm in committing the methamphetamine possession and transportation offenses. Herrera subsequently admitted the truth of the allegations she had a prior section 11379, subdivision (a), conviction on February 6, 2003, and a prior section 11378 conviction on July 3, 1996.

The trial court sentenced Herrera to the upper term of four years on the transportation conviction, a consecutive middle term of four years on the armed enhancement, and consecutive three-year terms for each of the two prior convictions, for a total term of 14 years. The court imposed the upper term of three years for the possession for sale conviction, but stayed its execution pursuant to section 654. Herrera timely filed a notice of appeal.

DISCUSSION

I

*Sufficiency of the Evidence*

Herrera contends the evidence is insufficient to support her convictions of possession for sale, transportation (or transportation for sale), and receiving stolen property, and the true findings that she was personally armed with a firearm and had two prior convictions.

A

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 (*Guerra*).) The same standard applies to cases in which the prosecution relies primarily on circumstantial evidence. (*Ibid.*) In applying the substantial evidence standard of review, we do not reweigh the evidence or reevaluate the credibility of witnesses. (*Ibid.*)

B

*Possession for Sale.* Herrera argues that because the evidence is insufficient to support a finding she possessed the methamphetamine with the intent to sell it, her section 11378 conviction must be reversed. "Unlawful possession of a controlled

6

substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character." (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.) Citing *People v. Newman* (1971) 5 Cal.3d 48, 53, Herrera acknowledges cases have upheld convictions of possession for sale based on an expert's opinion that the drug was possessed with the intent to sell it. "It is well settled that '. . . experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld.' " (*People v. Parra* (1999) 70 Cal.App.4th 222, 227.)

Based on the record in this case, we conclude there is substantial evidence to support the jury's finding that Herrera possessed the methamphetamine with the intent to sell it. Peraza testified as an expert in street-level narcotics transactions in this case. He testified that Herrera possessed the methamphetamine she hid in the patrol vehicle with the intent to sell it. He based his opinion on the amount of methamphetamine (i.e., 32 grams)—sufficient to divide into over 1,200 street doses, the manner in which it was packaged, the gun, the money Herrera possessed, the scale, and the baggies. He testified his opinion that the methamphetamine was possessed with the intent to sell was not "even a close call."

In addition to Peraza's opinion, there is additional evidence to support the jury's finding that Herrera possessed the methamphetamine with the intent to sell it. Derma had two bindles of methamphetamine in one of his boots, which bindles were consistent with personal use. The bindles are known on the street as "8-balls" with a street price of $150

7

each.  Herrera had $305.25 in her possession.  Therefore, the jury could reasonably infer, as Peraza testified, that Herrera could have sold the two bindles to Derma for $150 each and received $300 in cash from him.  The jury could further reasonably infer that because she had sold the two bindles to Derma, she also possessed the other methamphetamine (i.e., 32 grams) with the intent to sell it.

To the extent Herrera cites evidence and inferences that would have supported a contrary finding by the jury, she either misconstrues and/or misapplies the substantial evidence standard of review.  The fact neither she nor Derma admitted participating in a drug sale and none of the officers saw an exchange does not refute the substantial evidence, discussed above, supporting the jury's finding.  Likewise, although Derma may have been in control of the truck and arguably could have placed the bag behind the glove box and gun between the seat and console, the jury could reasonably infer that Herrera had instead placed the bag behind the glove box and the gun between the seat and console.  Furthermore, the lack of forensic evidence tying Herrera to the gun or the bag hidden behind the glove box did not preclude the jury from reasonably inferring she possessed the methamphetamine with the intent to sell it.  None of the evidence, or lack of evidence, cited by Herrera shows the evidence is insufficient to support her conviction of possession of methamphetamine for sale.  We conclude there is substantial evidence to support the jury's findings she had the intent to sell the methamphetamine and was guilty of possession of methamphetamine for sale.

C

*Transportation.*  Herrera argues that because she was merely a passenger in Derma's vehicle, the evidence is insufficient to support her conviction of transportation of methamphetamine (§ 11379, subd. (a)).  Under former section 11379, subdivision (a),[3] in effect at the time of Herrera's 2012 conduct, "[t]ransportation of a controlled substance is established by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character."  (*People v. Meza*, *supra*, 38 Cal.App.4th at p. 1746.)  There is no minimum distance for moving, carrying, or conveying a controlled substance to constitute transportation under section 11379, subdivision (a).  (*People v. Emmal* (1998) 68 Cal.App.4th 1313, 1315-1316.)

Based on the record in this case, the jury could reasonably infer Herrera moved, carried, or conveyed the two bindles of methamphetamine later found in Derma's boot.  As discussed above, the jury could reasonably infer Herrera sold the two bindles to him.  The jury could further infer that, in so doing, she entered Derma's truck carrying the two bindles and they drove off in the truck before stopping to conduct the drug transaction.  Based on those inferences from the evidence, the jury could reasonably find Herrera was guilty of transporting methamphetamine in violation of section 11379, subdivision (a).  Likewise, the jury could also reasonably infer that Herrera entered Derma's truck carrying the plastic bag containing over 32 grams of methamphetamine and voluntarily sat as his

---

3     As discussed below, section 11379 was amended, effective January 1, 2014, to add the requirement that the transportation be "for sale."  (Stats. 2013, ch. 504.)

passenger while he drove the truck down E Street and then stopped. Even had the jury not found she sold the two bindles to Derma, there nevertheless was substantial evidence to support the jury's finding that Herrera transported methamphetamine in violation of section 11379, subdivision (a).

Herrera argues there was no evidence showing how she got in the truck, how long she was in the truck, and whether she had the methamphetamine with her. However, in so arguing, she either misconstrues and/or misapplies the substantial evidence standard of review. When a defendant challenges a conviction for insufficiency of evidence, we must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence and do not reweigh the evidence. (*Guerra*, *supra*, 37 Cal.4th at p. 1129.) Because the jury could reasonably infer she voluntarily got in the truck with the methamphetamine before the officers saw it driving along E Street and then stopping, there is substantial evidence to support her conviction of transporting methamphetamine.

D

Herrera alternatively argues the evidence is insufficient to support her transportation conviction because the 2014 amendment to section 11379 applied retroactively to her 2012 conduct and therefore required the jury to also find she transported the methamphetamine for purposes of selling it. Effective on January 1, 2014, section 11379 was amended to add new subdivision (c), which states: "For purposes of this section, 'transports' means to transport for sale." (Stats. 2013, ch. 504.) However, assuming arguendo, without deciding, Herrera is entitled to retroactive

10

application of amended section 11379, there nevertheless is substantial evidence to support the jury's finding she moved, carried, or conveyed the methamphetamine for purposes of selling it. As we concluded above, there is substantial evidence to support the jury's finding that Herrera possessed the methamphetamine for purposes of selling it. Therefore, there necessarily is substantial evidence to support the additional finding that she had a like intent when she moved, carried, or conveyed the methamphetamine. Herrera does not carry her burden on appeal to show otherwise.

E

Herrera argues the evidence is insufficient to support the jury's true findings on the allegations she was personally armed with a firearm in committing the possession for sale and transportation offenses within the meaning of Penal Code section 12022, subdivision (c). That statute provides: "[A] person who is personally armed with a firearm in the commission of a violation or attempted violation of Section . . . 11378 [or] 11379 . . . shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of [Penal Code] Section 1170 for three, four, or five years." (Pen. Code, § 12022, subd. (c).) Under that statute, a person is "personally armed" if he or she has the firearm on his or her person or has it available for offensive or defensive use. (*People v. Bland* (1995) 10 Cal.4th 991, 997; *People v. Mendival* (1992) 2 Cal.App.4th 562, 574.) A defendant is personally armed with a firearm under that statute only if he or she actually commits the prohibited conduct. (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1013; *Bland*, at p. 998, fn. 3.)

11

Based on the record in this case, there is substantial evidence to support the jury's findings that Herrera was personally armed with a firearm within the meaning of Penal Code section 12022, subdivision (c), when she committed the possession for sale and transportation offenses. Officers found the .357 handgun hidden between the driver's seat and the center console and covered with a cloth. The gun was easier for Herrera to reach than for Derma. The gun had one empty chamber and Herrera had a used .357-caliber shell casing in her jacket pocket. Peraza testified that drug dealers carry firearms. That evidence provides strong circumstantial evidence to support reasonable inferences that Herrera knew the .357 handgun was located between the driver's seat and the center console and that she had it available for her offensive or defensive use. There is substantial evidence to support the jury's true findings on the Penal Code section 12022, subdivision (c), allegations.

Herrera argues the evidence is insufficient to support those findings because Derma was in control of the truck, she told officers she merely got a ride from him, and there was no evidence of how long she had been in the truck or how long the gun had been in the truck. She also notes she denied she owned the jacket she was wearing that contained the .357 cartridge in its pocket. However, in so arguing, she either misconstrues and/or misapplies the substantial evidence standard of review. As discussed above, we must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence and do not reweigh the evidence. (*Guerra*, *supra*, 37 Cal.4th at p. 1129.) Because the jury could reasonably infer Herrera knew the .357 handgun was in the truck and available for her offensive or defensive use, there is

12

substantial evidence to support the jury's true findings that she was personally armed with a firearm within the meaning of Penal Code section 12022, subdivision (c), in committing the possession for sale and transportation offenses.

F

Herrera asserts the evidence is insufficient to support her conviction of receiving stolen property (Pen. Code, § 496, subd. (a)). She argues there was no evidence showing she knew the gun was in the truck or that she knew the gun was stolen. The elements of the offense of receiving stolen property are that the defendant received or withheld from its owner property that had been stolen, knew of the presence of the property, and knew the property was stolen. (CALCRIM No. 1750.)

At trial, Herrera stipulated the .357 handgun had been stolen. Peraza testified that its theft was recent. Peraza further testified that possession of an expended shell casing was consistent with test-firing the firearm. Because the jury could reasonably infer the jacket Herrera was wearing was hers, it could further reasonably infer she knew the used .357-caliber shell was in its pocket and may have even test-fired the handgun herself. The jury could also reasonably infer Herrera placed the handgun between the driver's seat and the center console when she saw law enforcement approach Derma's truck. There is substantial evidence to support the jury's finding that Herrera knowingly possessed that firearm and knew it was stolen. (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421 [knowing possession of recently stolen property supports strong inference of knowledge that property was stolen with only slight additional corroborating evidence required].)

13

G

Herrera argues the evidence is insufficient to support the trial court's true findings on the allegations she had two prior convictions within the meaning of section 11370.2, subdivision (b). She argues her prior 1996 section 11378 conviction and her prior 2003 section 11379, subdivision (a), conviction are not listed under subdivision (b) of section 11370.2, but instead are listed under subdivision (c) of that statute, and therefore the true findings on the allegations must be reversed. Although she is correct regarding her reading of section 11370.2, we disagree that the true findings must be reversed.

Section 11370.2 provides in relevant part:

> "(b) Any person convicted of a violation of, or of a conspiracy to violate, Section 11378.5, 11379.5, 11379.6, 11380.5, or 11383 shall receive, in addition to any other punishment authorized by law, . . . a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment.

> "(c) Any person convicted of a violation of, or of a conspiracy to violate, Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, . . . a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment."

In connection with the instant possession for sale and transportation charges, the first amended information in this case also alleged that; "[P]ursuant to . . . section 11370.2(b) that [Herrera] was convicted of the following offense(s), to wit:" and then lists

14

information regarding Herrera's 1996 section 11378 conviction and her 2003 section 11379, subdivision (a), conviction. It specifically alleged Herrera was convicted on July 3, 1996, in San Bernardino, California, of the section 11378 offense and was convicted on February 6, 2003, in Los Angeles, California, of the section 11379, subdivision (a), offense. Herrera admitted she suffered those two prior convictions.

We agree with Herrera that the first amended information incorrectly identified section 11370.2, subdivision (*b*), as the basis for its prior conviction allegations. The information should have, instead, alleged she had two prior convictions subjecting her to sentence enhancements under section 11370.2, subdivision (*c*). However, contrary to her assertion, the information's misidentification of the correct subdivision for the prior conviction allegations does not require reversal of the true findings for lack of supporting substantial evidence or otherwise. Penal Code section 969 provides:

> "In charging the fact of a previous conviction of a felony . . . , it is sufficient to state, 'That the defendant, before the commission of the offense charged herein, was in (giving the title of the court in which the conviction was had) convicted of a felony . . . .' If more than one previous conviction is charged, the date of the judgment upon each conviction may be stated, and all known previous convictions, whether in this State or elsewhere, must be charged."

Penal Code section 960 provides: "No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." "[I]t is clear that a valid accusatory pleading need not specify by number the statute under which the accused is being charged." (*People v. Thomas* (1987) 43 Cal.3d 818, 826.) "[T]he specific allegations of the accusatory

pleading, rather than the statutory definitions of offenses charged, constitute the measuring unit for determining what offenses are included in a charge." (*People v. Marshall* (1957) 48 Cal.2d 394, 404.) Furthermore, "even a reference to the wrong statute has been viewed of no consequence under the circumstances there appearing [citations]." (*People v. Schueren* (1973) 10 Cal.3d 553, 558.) It is the *substance* of the prior conviction allegations, and not their numerical or alphabetical statutory citations, that is reviewed in determining whether the allegation has been properly pleaded in an information. In this case, the first amended information properly pleaded that Herrera had two prior convictions and specifically identified them (i.e., the 1996 § 11378 conviction and the 2003 § 11379, subd. (a), conviction), and Herrera admitted she had those two prior convictions. Therefore, contrary to Herrera's assertion, she had sufficient notice of the allegations against her and an opportunity to defend against them, and there is substantial evidence to support the true findings on the prior convictions allegations. Furthermore, the first amended information's misidentification of the correct subdivision of section 11370.2 did not prejudice a substantial right of Herrera. (Pen. Code, § 960.)

II

*Herrera's Eligibility for Local Custody*

Herrera contends, and the People concede, the trial court erred by concluding she was ineligible for local custody and then sentencing her to prison.

A

At the November 18, 2013, sentencing hearing, the trial court imposed a total term of 14 years in prison for her convictions and enhancements, but continued the matter for

16

determination of her custody credits. At the December 20, 2013, hearing to determine custody credits, Herrera's counsel asked the court order that she serve her sentence in local custody. However, the court denied that request, stating the jury found true the allegation Herrera "personally used" a firearm in committing her possession for sale and transportation offenses, thereby precluding her from serving local custody.

B

Herrera was convicted of the felonies of possession of methamphetamine for sale (§ 11378) and transportation of methamphetamine (§ 11379, subd. (a)), and suffered a true finding on the allegation she was personally armed with a firearm in committing those offenses (Pen. Code, § 12022, subd. (c)). The statutes for each of those two offenses and the enhancements provides that the defendant found guilty of those offenses or found true on the enhancement allegation "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170" of the Penal Code. (§§ 11378, 11379, subd. (a); Pen. Code, § 12022, subd. (c).) Penal Code section 1170, subdivision (h), provides:

> "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of *imprisonment in a county jail* for 16 months, or two or three years.
>
> "(2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by *imprisonment in a county jail* for the term described in the underlying offense.
>
> "(3) Notwithstanding paragraphs (1) and (2), where the defendant (A) has a prior or current felony conviction for a *serious felony* described in subdivision (c) of Section 1192.7 or a prior or current conviction for a *violent felony* described in subdivision (c) of Section 667.5 . . . , *an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison*." (Italics added.)

17

Herrera asserts, and the People agree, that her possession for sale offense (§ 11378) and transportation offense (§ 11379, subd. (a)) are not serious or violent felony offenses within the meaning of Penal Code sections 1192.7, subdivision (c), and 667.5, subdivision (c). Furthermore, the statute cited by the trial court as the ground for denying Herrera's request for local custody (i.e., Pen. Code, § 1192.7, subd. (c)) does *not* make either of Herrera's felony offenses a "serious felony." Rather, the court relied on that statute's provision that a "serious felony" includes "any felony in which the defendant personally *uses* a firearm." (Pen. Code, § 1192.7, subd. (c)(8), italics added.) In so doing, the court incorrectly assumed the jury had found true an allegation Herrera had personally *used* a firearm in committing her two felony offenses. However, the first amended information alleged, and the jury found true allegations, that Herrera was personally *armed* with a firearm in committing those felony offenses within the meaning of Penal Code section 12022, subdivision (c).[4] The trial court erred by concluding Herrera had been found to have personally used a firearm in committing her two felony offenses. Therefore, contrary to its finding, she is eligible to serve her term of imprisonment in local custody under Penal Code section 1170, subdivision (h). On remand, the trial court shall exercise its discretion under Penal Code section 1170,

---

[4]     Penal Code section 12022, subdivision (c), provides: "[A] person who is personally armed with a firearm in the commission of a violation . . . of Section . . . 11378 [or] 11379 . . . shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 [of the Penal Code] for three, four, or five years."

subdivision (h)(5), strike the Penal Code section 1202.45 fine it imposed, and order local custody for Herrera's term of imprisonment.[5]

III

*Improper Dual Use of Herrera's Prior Convictions*

Herrera contends the trial court erred by declining to strike the prior conviction allegations and then imposing sentence enhancements for those prior convictions while also using those prior convictions in sentencing her on the transportation conviction and the enhancement for being personally armed in committing that offense.

A

Before sentencing, Herrera filed a motion requesting the trial court exercise its Penal Code section 1385 discretion to dismiss the prior conviction allegations in the interest of justice. The court stated Herrera had no right to file such a motion and declined to exercise its discretion to dismiss those allegations on its own motion. At the sentencing hearing, Herrera renewed her request that the court strike the prior conviction allegations because they were remote in time. The court denied her request. The court then sentenced Herrera to the upper term of four years on the transportation conviction, a consecutive middle term of four years on the armed enhancement, and consecutive three-year terms for each of the two prior convictions, for a total term of 14 years. The court

---

5    Furthermore, as the People suggest, the trial court should correct the abstract of judgment to reflect the Penal Code section 12022, subdivision (c), four-year enhancement relates to Herrera's section 11379, subdivision (a), transportation offense (i.e., count 2) and not her section 11378 possession for sale offense (i.e., count 1).

19

imposed the upper term of three years for the possession for sale conviction, but stayed its execution pursuant to section 654. The court explained its reasons for those sentences, stating:

> "The upper term [for Herrera's transportation conviction] is selected *due to the prior convictions* and the nature of this offense, the way it occurred and . . . particularly the large amount or relatively large amount of methamphetamine recovered, *coupled with the prior convictions*, indicates to the Court that the upper term is more than warranted." (Italics added.)

In sentencing Herrera on the firearm enhancement, the court stated:

> "As to being personally armed with the firearm, the Court would impose the middle term of 48 months or four years. And the reason the middle term is selected is that there do not appear to be any other firearm-related offenses or violent offenses in connection with Ms. Herrera's past. So I don't think the upper term would be appropriate. However, *given the prior convictions occurring in 1996 and 2003*, I do not think the lower term would be appropriate, either. So the middle term of 48 months is selected for those reasons." (Italics added.)

B

A sentencing court may not use a single fact to both aggravate a base term and impose an enhancement. (Pen. Code, § 1170, subd. (b) ["The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."]; Cal. Rules of Court, rule 4.420(c) & (d); *People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12 ["[T]he court cannot rely on the same fact to impose both the upper term and a consecutive sentence."]; *People v. Bowen* (1992) 11 Cal.App.4th 102, 105 ["A sentencing court may not rely on the same fact to impose a sentence

20

enhancement and the upper term. [Citations.] Nor may a fact constituting an element of the offense be used to impose the upper term."].) California Rules of Court, rule 4.420 states in part:

> "(c) To comply with [Penal Code] section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing the upper term *only if the court has discretion to strike the punishment for the enhancement and does so*. The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment, regardless of the effect on the total term.
>
> "(d) A fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term." (Italics added.)

C

Because the trial court declined to exercise its discretion to strike the two prior conviction allegations and instead imposed consecutive terms for those prior conviction enhancements, it could not use those prior convictions as reasons in choosing sentences for Herrera's felony offenses or the firearm enhancement. By doing so, the court erred. Contrary to the People's assertion, we cannot conclude Herrera forfeited her challenge of that error by not objecting below. Neither the probation report nor the trial court gave Herrera any advance notice of reasons for imposing the upper term for the transportation conviction and the middle term for the firearm enhancement. Accordingly, we conclude she did not have a meaningful opportunity to object at the sentencing hearing. (Cf. *People v. Scott*, *supra*, 9 Cal.4th at p. 356.) Furthermore, contrary to the People's assertion, we cannot conclude the trial court's error was harmless. Rather, the court relied heavily on Herrera's two prior convictions in selecting sentences for her transportation

21

conviction and firearm enhancement.  Therefore, we conclude it is reasonably probable she would have obtained a more favorable result had the court not erred by improperly using her prior convictions in selecting those sentences.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  On remand, the court shall resentence Herrera and consider all appropriate sentencing factors in so doing.

## DISPOSITION

Herrera's convictions and enhancements are affirmed.  The sentence imposed by the trial court is reversed and the matter is remanded for resentencing consistent with this opinion.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.